UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANA MERCEDES SORIANO,<br><br>Petitioner,<br>v.<br><br>FACILITY ADMINISTRATOR, NORTHWEST IMMIGRATION PROCESSING CENTER, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03045-DGE<br><br>ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 12) |

Before the Court is Petitioner's amended petition for writ of habeas corpus. (Dkt. No. 12.) Petitioner contends Respondents violated her due process rights under the Fifth Amendment of the United States Constitution and the Immigration and Nationality Act ("INA") by both detaining her without prior notice and an opportunity to be heard and by providing her with a constitutionally deficient bond hearing. (*Id.* at 22–24.) Respondents argue Petitioner failed to exhaust administrative remedies. (Dkt. No. 15 at 9–11.) They further argue Petitioner's detention is lawful under 8 U.S.C. § 1226(a), as Petitioner received a constitutionally adequate

bond hearing at which an immigration judge determined Petitioner posed a flight risk. (*Id.* at 5–15.)

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

Petitioner is a native and citizen of the Dominican Republic. (Dkt. No. 5 at 2.) She entered the United States with an approved B-2 visa on November 18, 2015. (*Id.*) The visa was valid until May 17, 2016. (*Id.*) Petitioner was in a romantic relationship with a United States Citizen for over four years. (Dkt. No. 12-1 at 2.) He proposed to Petitioner and asked her to move to Alaska, assuring her he would help her obtain lawful immigration status. (*Id.* at 3.) They moved to Alaska in early 2016 and got married on February 16, 2016. (*Id.*) Shortly thereafter, Petitioner began experiencing physical, verbal, and emotional abuse from her husband. (*Id.*)

On June 11, 2018, Petitioner filed a self-petition for lawful immigration status pursuant to the Violence Against Women Act ("VAWA"). (Dkt. No. 1-3 at 9.) The petition was approved on January 9, 2020. (*Id.* at 77.) Petitioner obtained work authorization, secured employment, paid taxes, and maintained a clean criminal record. (Dkt. No. 12-1 at 4.) More than three years later, on August 14, 2023, United States Citizenship and Immigration Services ("USCIS') denied Petitioner's accompanying Form I-485 application to adjust status alleging she falsely claimed to be a United States citizen to obtain an Alaska driver's license. (Dkt. No. 1-3 at 9–17; Dkt. No. 5 at 2.)

Approximately two years later, on July 22, 2025, USCIS placed Petitioner in removal proceedings by serving her with a Notice to Appear ("NTA") by mail. (Dkt. No. 5 at 2.) The

NTA charged her under INA § 237(a)(1)(A)[1] for falsely representing herself as a United States citizen to obtain an immigration benefit, and under § 237(a)(1)(B)[2] for overstaying her visa. (Dkt. No. 6-2 at 5.) The NTA informed Petitioner she was to appear for her first immigration court hearing on April 20, 2026. (*Id.* at 2.)

Several months later, on December 18, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). (Dkt. No. 5 at 2; 6-1 at 3.) On the same day, Enforcement and Removal Operations ("ERO") officers served Petitioner with a Form I-200, Warrant of Arrest of Alien and Form I-286, Notice of Custody Redetermination.[3] (Dkt. Nos. 5 at 3; 6-1 at 4.)

On February 24, 2026, Petitioner, through counsel, filed a request for Custody Redetermination with the immigration court. (Dkt. No. 5 at 3.) Petitioner asserts she was not informed by ICE of her eligibility for a bond hearing until her family was able to obtain a lawyer. (Dkt. No. 12-1 at 4.) On February 24, 2026, Petitioner appeared before Immigration Judge John Odell, who denied her request for bond and checked the box on the bond order indicating that she posed a flight risk. (Dkt. No. 6-3 at 2.) Petitioner did not appeal the bond denial. (Dkt. No. 5 at 3.)

On March 10, 2026, Petitioner with counsel appeared before an immigration judge for a contested removability hearing. (Dkt. No. 5 at 3.) The immigration judge sustained the removability charge under INA § 237(a)(1)(A). (*Id.*) On May 1, 2026, Petitioner appeared with counsel for an individual hearing to adjudicate her application for relief. (*Id.*) On May 8, 2026, the immigration judge denied Petitioner's application for relief and granted voluntary departure

---

[1] INA § 237(a)(1)(A) is codified at 8 U.S.C. § 1227(a)(1)(A).

[2] INA § 237(a)(1)(B) is codified at 8 U.S.C. § 1227(a)(1)(B).

[3] However, the Court notes that Respondents have not provided this Court with copies of these documents.

by June 8, 2026, to the Dominican Republic under safeguards or ordered her removed if she failed to depart. (*Id.* at 4; Dkt. No. 6-4.) Petitioner initially waived appeal, but later filed an appeal on June 8, 2026, which remains pending before the Board of Immigration Appeals ("BIA"). (Dkt. No. 16 at 2.)

### B. Procedural Background

On August 27, 2026, Petitioner filed a pro se petition for writ of habeas corpus. (Dkt. No. 1.) Respondents filed their return on September 10, 2026, and Petitioner filed her traverse on September 17, 2026. (Dkt. Nos. 4, 7.) On October 1, 2026, counsel for the Petitioner entered their appearance in this case. (Dkt. Nos. 8, 9.) Because Petitioner had new counsel after briefing already occurred, the Court entered a new briefing schedule. (Dkt. No. 13.) Petitioner, through counsel, filed an amended petition on October 13, 2026, arguing Respondents violated her procedural due process rights under the Fifth Amendment by failing to provide pre-deprivation notice before detaining her. (Dkt. No. 12 at 16–19.) Petitioner further contends she was denied a constitutionally adequate bond hearing because the immigration judge merely checked a box indicating she posed a flight risk. (*Id.* at 10–15.) The Respondents filed their amended return on October 29, 2026, arguing that Petitioner failed to exhaust administrative remedies and that her detention is lawful under 8 U.S.C. § 1226(a).[4] (Dkt. No. 15 at 5–11.) Respondents further maintain that Petitioner received adequate due process and a constitutionally sufficient bond hearing. (*Id.* at 11–15.) Petitioner filed a traverse on November 3, 2026. (Dkt. No. 17.)

---

[4] In support of their amended return memorandum, Respondents provide several declarations (Dkt Nos. 5, 6, 16). However, the declaration submitted by Jennifer Wong (Dkt. No. 6) is deficient because it lacks the requisite penalty-of-perjury language mandated by 28 U.S.C. § 1746. As such, it does not satisfy the statutory requirements for an unsworn declaration to be treated as the equivalent of a sworn affidavit.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show [she] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that [she] is being held contrary to law, . . . [and] [she] must satisfy [her] burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. ANALYSIS

### A. Administrative Exhaustion Is Not Required Here

Respondents argue the Petitioner should exhaust her administrative remedies through the BIA or request a new bond hearing before seeking relief in this Court. (Dkt. No. 15 at 9.) Respondents further state, "[a]lthough exhaustion of administrative remedies is not a jurisdictional prerequisite for habeas petitions, courts generally 'require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking [such] relief.'" (*Id.*) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzalez*, 548 U.S. 30 (2006)). "[A] district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies[.]" *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

In *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) the Court held that prudential exhaustion may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990). However, even if all three factors weigh in favor of exhaustion, a court may still waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Sec. & Exch. Comm'n v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). The exhaustion requirement may also be waived where the petitioner is "challenging issues other than the BIA's ruling on removability. *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Respondents argue prudential exhaustion is required because the BIA has particular expertise in evaluating whether the bond record establishes that the government is unlikely to prevail on the petitioner's removability challenge. (Dkt. No. 15 at 10.) They further contend that relaxing the exhaustion requirement would undermine the administrative process by allowing petitioners to bypass seeking bond redetermination before the immigration judge or appealing adverse bond decisions to the BIA. (*Id.*) Finally, they argue that exhaustion may provide Petitioner with the relief sought in this case, including release on bond. (*Id.*)

Applying the *Puga* factors, the Court does not find that prudential exhaustion is required here. As to the first factor, the Court acknowledges the BIA has subject-matter expertise for individual immigration bond decisions; however, an administrative appellate record is not

necessary to resolve purely legal questions. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017); *see Garcia v. Hyde*, 817 F. Supp. 3d 112, 125 (D.R.I. 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

Petitioner raises constitutional challenges under the due process clause of the Fifth Amendment. The resolution of her claims does not require the BIA to evaluate the bond record, make factual findings, or apply its special expertise in immigration matters. Rather, it requires this Court to determine whether the government's actions comport with the constitutional guarantees of due process—a question within the Court's judicial authority and expertise. Further, Petitioner is not asking this Court to reconsider the merits of her removability proceedings or to substitute its judgment for the BIA's assessment of the bond record. Therefore, the BIA's expertise in immigration matters is not necessary here.

The second *Puga* factor likewise weighs against requiring exhaustion because excusing exhaustion under these circumstances would not encourage the deliberate bypass of the administrative scheme. Petitioner does not seek to circumvent the BIA's authority to review the immigration judge's bond determinations. Rather, among other arguments, she challenges her initial detention based on Respondents' failure to provide pre-deprivation notice. Although the BIA may possess expertise in reviewing the immigration judge's assessment of the bond record, the expertise does not extend to resolving the constitutional question of whether Petitioner was afforded due process prior to her detention.

Moreover, permitting Petitioner to proceed directly in this Court would not undermine the administrative scheme. Petitioner is not asking this Court to displace the BIA's role in reviewing bond determinations; she seeks judicial review of the legality of her detention and the

constitutional adequacy of the procedures employed. Respondents' assertion that Petitioner might obtain release through a subsequent bond redetermination does not change this analysis.

As for the third Puga factor, the Court finds it also weighs against requiring exhaustion because administrative review is unlikely to eliminate the need for judicial review. The BIA cannot adequately remedy Petitioner's due process claim challenging the lack of pre-deprivation notice before detention. Thus, even if administrative review results in a favorable bond determination, it would not necessarily resolve Petitioner's constitutional claims or obviate the need for this Court's review.

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust her administrative remedies prior to seeking habeas relief.

**B. Petitioner's Lack of Pre-deprivation Notice Violated Due Process**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The application of the Due Process Clause to a noncitizen generally turns on whether that individual is 'within the territory of the United States.'" *Padilla v. United States Immigr. & Customs Enf't*, 192 F.4th 894, 909 (9th Cir. 2026) (quoting *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)). Physical entry into the United States is the "pivotal factor on which the scope of a noncitizen's due process rights turns." *Id.* Although noncitizens who remain on the threshold of initial entry are generally limited to the procedural protections Congress has authorized, those who are apprehended well within the country's borders are

entitled to the protections of the Fifth Amendment's Due Process Clause, regardless of whether their entry was lawful. *Id.* at 909–13.

Respondents concede Petitioner is detained pursuant to § 1226(a). (Dkt. No. 15 at 5.) Under § 1226(a) the government has the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings. However, the government's authority to detain noncitizens is not unlimited, and its discretion to incarcerate noncitizens in the first instance remains constrained by constitutional due process. *Hernandez*, 872 F.3d at 981.

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

Applying the factors here, the Court concludes Petitioner was entitled to meaningful notice and an opportunity to be heard before ICE revoked her longstanding liberty and placed her in immigration detention.

1. <u>Private interest</u>

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Here, Petitioner's liberty interest is particularly significant given the circumstances and duration of presence in the United States. Petitioner entered the United States in 2015 on a visitor visa. (Dkt. No. 5 at 2.) After her visa expired, she pursued immigration relief, filing a VAWA self-petition and an application for adjustment of status in 2018. (Dkt. No. 1-3 at 9.) Her VAWA petition was approved in January 2020. (*Id.* at 77.) Although her adjustment application was denied in August 2023, Respondents did not take her into custody (*id.* at 9), necessarily leading to the conclusion Petitioner was not considered a flight risk or a danger to the community. Instead, Petitioner continued living in the community for more than two additional years. (Dkt. No. 12-1 at 4.)

In July 2025, Respondents served Petitioner with an NTA. (Dkt. No. 6-2 at 2.) Critically, that notice informed her that she was required to appear for an immigration hearing in April 2026. (*Id.*) It did not notify her that she would be detained, or that ICE intended to revoke her ability to remain in the community, or that she needed to prepare to contest an impending deprivation of her liberty—all indications the immigration court did not believe she was a flight risk or danger to the community. Notwithstanding, Petitioner was subsequently arrested and

detained in December 2025, without advance notice or an opportunity to be heard. (Dkt. No. 5 at 2–3.)

"If the government is aware of a noncitizen's presence in the country without legal status and 'acquiesce[es]' in their continued liberty, 'reliance on [their] freedom create[s] a constitutionally protected liberty interest that cannot be extinguished without due process.'" *Sirbu v. Scott*, Case No. 2:26-cv-03832-TLF, 2026 WL 3334227, at *4 (W.D. Wash. Nov. 4, 2026) (citing *A.B.J.C. v. Hermosillo*, Case No. 2:26-cv-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026). During her years in the United States, Petitioner established substantial community ties. She has worked, paid taxes, established family relationships, and has grandchildren in the United States. (Dkt. No. 12-1 at 4.) Her detention has separated her from those relationships, deprived her of her ability to work and support herself, and subjected her to the substantial restraints inherent in physical confinement. (*Id.* at 4–5.)

Petitioner maintained a strong private interest in her continued liberty; the first *Mathews* factor weighs in her favor.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation was substantial because Petitioner received no meaningful notice that Respondents intended to detain her and had no opportunity to contest their decision before she was taken into custody. The decision to detain Petitioner was not by a neutral decisionmaker but by immigration enforcement officers who made the decision to detain without offering Petitioner an opportunity to respond.

The July 2025 NTA did not provide adequate notice of the impending deprivation. (Dkt. No. 6-2.) It informed Petitioner of removal proceedings and a hearing date in April 2026. (*Id.* at 2.) It did not inform her that ICE intended to arrest her, that her liberty was in jeopardy, or that Respondents made an individualized determination that detention was necessary. Quite the opposite, the fact that Petitioner was not taken into custody when the NTA was issued necessarily means Respondents had previously determined she was not a flight risk or a danger to the community. Notice that removal proceedings have commenced is not equivalent to notice of an intent to take an individual into physical custody.

Respondents allegedly provided Petitioner with a warrant of arrest and a notice of custody redetermination on the same day she was detained in December 2025. (Dkt. No. 5 at 3; 6-1 at 4.) But Respondents have not provided these documents to this Court. Even assuming the documents were provided to the Petitioner, notice accompanying or following an arrest is not pre-deprivation notice. It does not afford an individual an opportunity to prepare for, or contest, the Respondents' decision before the deprivation occurs.

This distinction matters. The purpose of pre-deprivation process is to allow an individual to challenge the factual and legal basis for the proposed deprivation before suffering it. A document being handed to an individual after she has already been arrested cannot serve that function.

The Supreme Court has explained that, although a pre-deprivation hearing is ordinarily required, post-deprivation procedures may suffice in circumstances where advance process is impracticable. *Zinermon v. Burch*, 494 U.S. 113, 127–29 (1990). Nothing in this record suggests that advance notice and an opportunity to be heard were impracticable here.

Respondents identify no exigent circumstances requiring Petitioner's immediate arrest without first providing her with an opportunity to contest her detention.

The record instead reflects that Petitioner had been living in the community for years. Respondents had known of her immigration history, including her prior applications for immigration relief, and had allowed her to remain out of custody. Respondents identify no intervening circumstances requiring her immediate detention.

Courts have repeatedly held "that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process. *Gagik T. v. Chestnut*, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026). Nor does it make a difference that Petitioner was not previously detained because Respondents "'made a decision not to detain her in the first place,' and that decision vested the same liberty interest as a prior detention and release." *Id.* (citing *Kharitonova v. Albarran*, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026)). Moreover, the "probable value of notice and a pre-detention hearing is particularly high where Petitioner is entirely unaware of the basis for his re-detention," or in this case, the Petitioner's initial detention. *Tsyamba v. Hermosillo*, Case No. 2:25-cv-02623-GJL, 2026 WL 237514, at *5 (W.D. Wash. Jan. 29, 2026).

Respondents cannot cure this constitutional deficiency by pointing to the bond hearing Petitioner eventually obtained approximately two months after her detention. The bond hearing does not remedy the Respondents failure to provide process *before* taking away Petitioner's liberty. As the court explained in *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), "[a]lthough the Government notes that Petitioner may request a bond hearing while

detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."

The second *Mathews* factor therefore weighs heavily in Petitioner's favor.

C. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The Court recognizes the government's legitimate interests in enforcing immigration laws, ensuring attendance at removal proceedings, and protecting public safety. *See Denmore v. Kim*, 538 U.S. 510, 518–19 (2003). But Respondents have not identified any exigency or particularized circumstance that required Petitioner's immediate detention without advance notice or an opportunity to be heard.

Petitioner has lived in the community for years, had established family and community ties, and had an upcoming immigration hearing scheduled for April 20, 2026. (Dkt. No. 6-2 at 2.) Respondents have not demonstrated that providing advance notice and a meaningful opportunity to contest detention would have compromised immigration enforcement or imposed an unreasonable administrative burden.

The government retains the authority to enforce immigration laws, but it must exercise its authority consistently with the Constitution. Its generalized interest in immigration enforcement does not justify dispensing with constitutionally required procedures where, as here, advance process was feasible.

In sum, all three *Mathews* factors weigh in favor of the Petitioner. The Court therefore concludes that Respondents violated Petitioner's Fifth Amendment right to due process by

detaining her without meaningful pre-deprivation notice and an opportunity to be heard. Because this constitutional violation provides an independent basis for granting habeas relief, the Court need not reach Petitioner's alternative argument that the immigration judge abused his discretion in finding Petitioner to be a flight risk.

## IV. CONCLUSION

Accordingly, the Court GRANTS Petitioner's amended petition for writ of habeas corpus (Dkt. No. 12) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) day** of this Order. Petitioner shall be subject to the same conditions previously governing her release. Without clear and convincing evidence from the Government that Petitioner is a flight risk or danger to the community, Respondents SHALL NOT subject her to GPS monitoring as a condition of release.
2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge. As with the imposition of conditions not previously imposed, the Government shall bear the burden of establishing flight risk or danger to the community at such hearing by clear and convincing evidence.[5]

[5] Because it would be the government initiating an attempt to re-detain, "'it follows that the government should be required to bear the burden of providing a justification for the re-detention.'" *Espinoza Palacios v, Hermosillo*, Case No. 2:26-cv-491-JNW, 2026 WL 686138, at *11 (W.D. Wash. Mar. 11, 2026) (quoting *Espinoza v. Kaiser*, Case No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025)).

3. Within **FORTY-EIGHT (48) hours** of this Order, Respondents SHALL confirm on the record that Petitioner has been released from custody.

4. Petitioner seeks an award of fees. (Dkt. No. 12 at 25.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting an award of fees and shall be filed **no later than February 22, 2027**.[6]

The Clerk is directed to calendar this event and close the matter.

Dated this 24th day of November, 2026.

David G. Estudillo
United States District Judge

[6] In a previous matter, Respondents have requested, and the Court granted, a motion to stay the enforcement of any award of attorney fees pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223. *See Douangdala v. Bondi*, Case No. 2:26-cv-00963-DGE, 2026 WL 2516555 (W.D. Wash. Aug. 26, 2026).